G. G. Gibson, Respondent, v. Henry Kayser's Executor et al., Appellants.

January 20, 1885.

1. Special Tax Bills — Street Reconstruction — Cross-walks. — A special tax bill for reconstructing a street may include charges for the spaces usually occupied by cross-walks, where the ordinance under which the work is done does not require that cross-walks shall be made.

2. —— Street Intersections. — Such a special tax bill may include charges for work extending to the middle line of the cross streets at each end of a block.

3. —— Curbing. — Such a special tax bill may include charges for curbing, not done in front of the particular lot against which the bill is made out, but done on other lots abutting on the improved street, the assessment being made *pro rata* against all the lots abutting on the street.

4. —— Grading. — In reconstructing a graded street, excavations which are necessary to prepare the street for laying the new paving material do not constitute "grading" within the meaning of the charter provision which makes the cost of grading a charge against the city.

Appeal from the St. Louis Circuit Court, Thayer, J. *Affirmed.*

John Wickham and J. L. & F. P. Blair, for the appellants : Cross-walks are not the raised portions of the road way in a city, extending from corner to opposite corner, but are the areas of the roadway traversed by pedestrians when they cross a street in the prolongation of the sidewalk. — *Blunt* v. *City of Janesville*, 31 Wis. 648, 656, 662. A lot is not chargeable with the cost of curbing not done in front thereof. — *Schenly* v. *The Commonwealth*, 36 Pa. St. 29, 60. Nor with the work done at the intersection of streets.

Leonard Wilcox, for the respondent : The ordinance did not direct cross-walks to be constructed, and none were constructed. — *Farrar* v. *St. Louis*, 80 Mo. 379. The lots mentioned in the petition were properly assessed with their proportion of the cost of the curbing actually done. No

other mode of assessment would have been legal. — *Eyerman* v. *Hardy*, 8 Mo. App. 311; *Neenan* v. *Smith*, 50 Mo. 526, 531; *Weber* v. *Schergens*, 59 Mo. 389, 393. That no curbing was done in front of said lots might have been a defence *pro tanto*, on the ground that the work was not properly done, if such a defence had been pleaded and it appeared that injury had resulted to the property (Charter, 2 Rev. Stats., p. 1610, sect. 25), but it certainly did not make the ordinance void. — *Farrar* v. *St. Louis*, *supra*; *Creamer* v. *McCune*, 7 Mo. App. 96; *Neenan* v. *Smith*, 60 Mo. 292; *Bank* v. *Arnoldia*, 63 Mo. 229; Charter 1876, art. VI., sect. 18.

LEWIS, P. J., delivered the opinion of the court.

This is an action on four special tax bills for work and materials furnished in reconstructing and repairing First Street, from Almond to Spruce Street, in the city of St. Louis.

The defendants complain that they are charged with the cost of paving areas which should have been occupied by cross-walks, but were not, although it was the duty of the city to make them. A similar objection was raised in a somewhat different form, in *Farrar* v. *City of St. Louis*, (80 Mo. 379). As would appear from Judge Norton's opinion, the property owner claimed that the special tax bill for an improvement extended over the length of seven squares, necessarily included the cost of cross-walks which the city was bound to construct at its own expense. It was held that the objection was not well taken, because the special ordinance for the work did not require any cross-walks to be made. The same omission from the ordinance exists in the present case, and the same result must follow in our disposition of the present objection. It is purely within the option of the city authorities to establish cross-walks, or not, according to their understanding of the public needs. Whenever they are established, the city must pay

for their construction. Where they are not established, the area of road construction which they might occupy, but do not, is as legitimate a subject of charge against the lot owners, as any other in the road-bed. No law makes it the duty of the city to construct cross-walks at all street intersections. Our attention is called to *Blount* v. *City*, 31 Wis. 648. In that case, the crossings at the street intersections were of the same material as the roadway, and were slightly elevated for the accommodation of pedestrians. The court held that they should be paid for from the fund appropriated to cross-walks. Says the opinion : " The charter recognizes the designated spaces at the street crossings as cross-walks, and so must we." The St. Louis charter, so far as we can perceive, contains nothing of like effect. We understand a cross-walk to be a structure specifically adapted to the use of pedestrians, whether placed at the street intersections, or any where between them.

The street improvement in this case extended to the middle line of the cross street at either end of the block. This extension, it is objected, created no proper charge against an owner of property between the proximate lines of the cross streets. If the objection be well founded, there is at every street intersection a square of ground, defined by the exterior lines of the two streets, the cost of whose improvement can not be assessed against any property owner. Such is not the law. The special ordinance in this case expressly provided for " making all proper connections and intersections with other streets and alleys," and that, " the entire cost of the foregoing work, and all proper connections and intersections required, shall be charged as a lien upon the adjoining property fronting or bordering on the improvement herein provided for, and shall be paid by the owners thereof." If these provisions are valid and en_forcible, the objection must fail. The ordinance in the *Farrar Case* above mentioned contained the same provisions, word for word, and the supreme court sustained their ap-

plication with full effect to all the streets intersecting Washington Avenue, from Fifth Street to Twelfth. The argument that inequalities appear in the fact that owners of property fronting on the cross streets are not assessed, is of no force. Practical inequalities are unavoidable in all assessments for public improvements, but they are never held to vitiate an exercise of the municipal authority involved, where it is not shown that they violate some right distinctly guaranteed by law. In the *Farrar Case*, our supreme court adopts the language of Dillon on Corporations (sect. 752), which seems to dispose of all the objections here raised in this connection: " The courts are very generally agreed that the authority to require the property specially benefited to bear the expense of local improvements is a branch of the taxing power or included within it, and the many cases which have been decided fully establish the general proposition that a charter or statute authorizing the municipal authorities to open or establish streets, or to make local improvements of the character above mentioned, and to assess the expense upon the property which in the opinion of the designated tribunal of officers shall be specially benefited by the improvement in proportion to the amount of such benefit, or upon the abutters in proportion to benefits or frontage or superficial contents, is, in the absence of some constitutional restriction, a valid exercise of the taxing power."

It is further objected that it was unlawful to assess the cost of curbing against defendant's lot, because no curbing was done on that lot, and all that was done was upon the lots of other owners, fronting on the improvement. The city charter directs: " The paving, *curbing*, guttering, sidewalks, and the materials for the roadways, the repairs of all alleys, and sidewalks, shall be charged upon the adjoining property as a special tax, and collected and paid as hereinafter provided." Rev. Stats., p. 1608, sect. 18.

The subsequent provisions, and the ordinances passed in pursuance of them, are those under which the present assessment was made, and which have been uniformly sustained by judicial authority. It is perceived that curbing is placed upon the same footing as materials for roadways, and this sufficiently brings it within the " linear front foot rule." The city ordinance (Rev. Ord., p. 529, sect. 3), applies to cases where the lot owner neglects to keep his sidewalk in repair. It is not adapted to a general reconstruction or improvement of the street. Such an application of the ordinance would be unauthorized, as in derogation of the charter.

In preparing the road-bed the ground was excavated to a depth of eighteen inches below the intended surface line of the street. The defendants complain that they were unlawfully charged for this work, because the city is bound to do all the grading. But the work referred to was not grading. It was a mere preparation of the ground for the superstructure. "Grading" is the establishing of the level, or inclination, as the case may be, as determined upon for the surface way of the street. It may be accomplished, according to circumstances, as well by filling above the natural surface, as by digging below it.

The exhaustive opinion of Judge Norton, in *Farrar* v. *City* (80 Mo. 379), completely answers, in our view, every objection raised against the special tax bills in the present case. So far as there is novelty in the present defence, it appears rather in the skillful methods of the argument, than in the substance of the points urged upon our attention.

With the concurrence of Judge Thompson (Judge Rombauer not sitting) the judgment is affirmed.